[625 NYS2d 121]

TRAVELERS INSURANCE COMPANY, as Subrogee of RCA GLOBAL COMMUNICATIONS, INC., Respondent, v FEDERAL PACIFIC ELECTRIC COMPANY et al., Doing Business as FEDERAL PACIFIC CORPORATION, Appellants, et al., Defendants.

First Department, April 4, 1995

## APPEARANCES OF COUNSEL

*Lawrence A. Hoffman* of counsel *(Olshan Grundman Frome Rosenzweig,* attorneys), for appellants.

*Dennis M. Perlberg* of counsel *(Speyer & Perlberg,* attorneys), for respondent.

## OPINION OF THE COURT

NARDELLI, J.

RCA Global Communications, Inc. (RCA) had been conducting telecommunications operations from 60 Broad Street for some 20 years when a water pipe burst on January 23, 1982, flooding a switchboard, tripping a circuit breaker, and interrupting power to the air-conditioning system. Dennis Castelli, an RCA electrical technician with no formal electrical training but on-the-job training for 12 years, and his supervisor, Vincent DeChiaro, a licensed electrician, restored the air conditioning by using a back-up system. They attempted to dry out the switchboard room, using a kerosene heater and fans, checked the switchboard visually, and used rags to clean the circuit breakers, which had been removed from their operating position (racked out). The next morning, Castelli and DeChiaro were joined by RCA's Manager of Plant Utilities, Howard Smith, an electrical engineer who had studied power engineering in college and who had 20 years' experience. They visually inspected the switchboard and circuit breakers but conducted no tests on either to determine if they were dry and safe to operate. The only test they performed was to use an ohmmeter to check the control circuit. A blown fuse was found and replaced. The circuit breakers were placed into operating position (racked in), and Smith directed DeChiaro to reactivate the circuit breaker. This direction was given despite the fact Smith testified that he knew that one was supposed to test the operation of a wet switchboard before putting it back into use. Smith testified that a "megger", a device used to test short circuits in equipment, which RCA had on the day of the occurrence, was an instrument one should use after a piece of electrical equipment gets wet in order to determine whether its insulation is intact. DeChiaro, the licensed electrician, also testified that a megger was available and that he knew how to use it.

The reactivation of the circuit breaker could be done electrically, by pressing a start button, and manually by an operating handle. The various employees of RCA differed as to what

happened from the point Smith told DeChiaro to activate the breaker. DeChiaro testified that he pressed the start button twice, and according to his and Castelli's trial testimony, there was a "snap" and everyone ran from the room up the stairs and a "big ball of fire" came right after them up the stairs. While Castelli, at trial, said he did not recall if DeChiaro had attempted to activate the breaker manually, at the pretrial deposition he had testified that he had seen DeChiaro "close the handle". While DeChiaro denied attempting to activate the breaker manually, there were reports prepared by plaintiff's experts which alternatively stated that DeChiaro attempted to operate the breaker manually and it did not engage and that two attempts were made to operate the breaker electrically and three attempts were made manually. In any event, no attempt was ever made to determine why the circuit breaker did not close. Nor was the second circuit breaker ever considered for use, and there were no tests performed on the circuit breaker to find if there was power, although even Castelli knew there was a way to test the breaker before activating it and knew how to do so; both DeChiaro and Smith knew about meggers being used to test the breaker and knew that a megger was available on the premises for use. When the circuit breaker tripped, it was doing what it was supposed to do. It functioned.

Plaintiff Travelers Insurance Company (Travelers), the subrogee of RCA, brought this action to recover from Federal Pacific Electric Company and Reliance Electric Company, doing business as Federal Pacific Corporation (collectively Federal), the supplier of the circuit breakers, and from others. The jury found that the circuit breakers were not defectively or negligently designed. It found, however, that Federal was negligent in not giving adequate warnings and instructions and that this negligence was a proximate cause of the incident. It also found that damages were due to the misuse of the circuit breakers and switchboard by RCA's employees. It apportioned responsibility as follows: plaintiff 70%, defendant Federal 15%, and Uris Broad and Beaver Corporation (Uris), for whom the building was constructed, 15%.

Federal's contention that there was no duty to warn, since the circuit breaker was used in a way in which it as the manufacturer could not reasonably foresee, is without merit. "The question of foreseeability is one for the court when the facts are undisputed and but one inference can be drawn; it is for the jury when varying inferences may be drawn" *(Juiditta*

*v Bethelem Steel Corp.,* 75 AD2d 126, 132, citing *Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 345). Since the evidence raised varying inferences, it was the province of the jury to decide whether the risk was foreseeable by defendant so as to impose a duty to warn *(see, Heller v Encore of Hicksville,* 53 NY2d 716, 717-718). Plaintiff's subrogor was clearly a knowledgeable user of the circuit breakers, however; RCA did know of the danger with respect to which the warning was lacking.

*Rosebrock v General Elec. Co.* (236 NY 227) is cited by plaintiff as the seminal case that created the knowledgeable user exception. There, wooden blocks placed in a transformer for shipping purposes caused an explosion when the transformer was installed. The Court of Appeals noted, in that case: "If transformers, as known to the trade, were generally packed with wooden blocks in shipment, and the defendant had reason to believe that the power company knew this and would take them out, then the defendant would not be liable in selling its transformers without notice regarding the blocking because it would be guilty of no negligence" *(supra,* at 240).

In *Rosebrock,* there was conflicting evidence as to whether the power company knew of the wooden blocks, etc., and thus a factual issue was presented for jury determination. However, "[t]here is 'no necessity to warn a customer already aware—through common knowledge or learning—of a specific hazard' and, in the proper case, the court can decide as a matter of law that there is no duty to warn or that the duty has been discharged *(Lancaster Silo & Block Co. v Northern Propane Gas Co.,* 75 AD2d 55, 65; *see, Alessandrini v Weyerhauser Co.,* 207 AD2d 996; *Wolfgruber v Upjohn Co.,* 72 AD2d 59, 62, *affd* 52 NY2d 768). Plaintiff, an electronics technician, was a 'knowledgeable user' of the connector plug, and thus there was no duty to warn." *(Bigness v Powell Elecs.,* 209 AD2d 984, 985.)

RCA's employees were the epitome of "knowledgeable users" of circuit breakers in a wet condition. Smith had a degree in electrical engineering with emphasis on power engineering. DeChiaro was a licensed electrician, and Castelli was an electrical technician at RCA for about 12 years. Smith testified that he learned in school what to do when an electrical switchboard got wet and how to go about testing it. Both he and DeChiaro knew a megger was a test instrument which should be used in the precise situation they were faced with and that one was available on the premises. Even Castelli

knew that there was a way to test the breaker before putting it back into live operation and knew how to do it. No tests, however, were performed on the switchboard or circuit breakers except to determine whether there was power flowing in the circuit to the switchboard. Stephen Lambert, plaintiff's liability expert witness, testified that RCA's electricians should have determined where the fault was located and cleared the fault before reenergizing the circuit breaker and called their failure to do so "egregious". William Landahl, another of plaintiff's experts, identified Travelers' Boiler, Pressure Vessel and Machinery Manual (the BPVM), which was introduced into evidence. He testified that plaintiff expected its insureds to follow the practices contained in the Manual in maintaining their electrical and other equipment. The BPVM specifically noted that electrical equipment which has been submerged or even lain idle in a damp location should not be put into service until tests are made. It is specified in the BPVM that an insulation tester or megger can be used to determine the condition of the insulation in such cases. Yet another of plaintiff's experts, Dr. Alexander Kusko, testified that a document admitted into evidence, "Electrical Safety Requirements for Employee Workplaces", or National Fire Protection Association (NFPA) Document 70E, was a safety standard representing minimum practices for electrical safety. This NFPA Document 70E provided, *inter alia,* that after a circuit is deenergized by a protective device, the circuit "shall not be manually reenergized" until it is determined that it can safely be done.

Given the evidence as to the common knowledge of the minimal accepted practices in the field and the level of expertise, training and experience of the RCA electricians which encompassed the specific situation they faced, the IAS Court should have found that there was no necessity on the part of Federal to warn RCA, which was already aware of the specific hazard, and the court should have granted Federal's motion entering judgment in its favor as a matter of law *(see, Oza v Sinatra,* 176 AD2d 926, 928).

Accordingly, the judgment of the Supreme Court, New York County (Irma Santaella, J.), entered July 30, 1993, and as amended and entered February 24, 1994, and the order of said court and Justice, entered November 22, 1993, should be reversed, on the law, without costs, to the extent appealed from, the complaint as against Federal dismissed, and the matter remanded for a new trial solely on the question of the

determination of the percentage of responsibility to be charged to plaintiff and to Uris.

ELLERIN, J. P., KUPFERMAN, ASCH and TOM, JJ., concur.

Judgment, Supreme Court, New York County, entered July 30, 1993, as amended and entered February 24, 1994, and order of said court and Justice, entered November 22, 1993, reversed, on the law, without costs, to the extent appealed from, the complaint as against Federal dismissed, and the matter remanded for a new trial solely on the question of the determination of the percentage of responsibility to be charged to plaintiff and to Uris.