BANFF LTD., Plaintiff,

v.

EXPRESS, INC., Defendant.

No. 93 Civ. 2514 (SAS).

United States District Court,
S.D. New York.

Dec. 29, 1995.

Parker H. Bagley and Bradley B. Geist, Brumbaugh, Graves, Donohue & Raymond, New York City, for plaintiff Banff Ltd.

Frank J. Colucci and Angelo Notaro, Colucci & Umans, New York City, for defendant Express, Inc.

## OPINION AND ORDER
SCHEINDLIN, District Judge:

After a six day trial in this copyright and trademark action, the jury returned a verdict for plaintiff. Banff Ltd. ("Banff"), a knitwear manufacturer. The jury found that Defendant Express, Inc. ("Express"), a retail clothing chain, had infringed Plaintiff's copyright by selling a knockoff of Plaintiff's Aran fisherman's sweater. The jury awarded Plaintiff $200,685 in actual damages and $1,017,240 in profits it determined Defendant earned from the infringement. The jury also concluded that Defendant had violated § 43(a) of the Lanham Act by infringing Plaintiff's trade dress and by falsely designating the origin of the copied sweaters. However, the jury was not persuaded that Defendant violated the Lanham Act in a "willfully deceptive" manner, and awarded no damages on the trademark claims.

Express now moves, pursuant to Fed. R.Civ.P. 50(b), for judgment as a matter of law on a number of Banff's claims. First, Express contends that it is entitled to judgment on Banff's claim for actual damages under the Copyright Act. Second, Express contends that the jury's verdict as to the amount of profit it made from the infringing sweaters is unfounded, and should be reduced to no more than $274,812. Third, Express argues that it is entitled to judgment on Banff's claims for trade dress infringement and false designation of origin. Alternatively, pursuant to Fed.R.Civ.P. 59, Express seeks a new trial on each of the issues addressed in its motion. For the reasons set forth below, Express' motion for judgment as a matter of law is granted in part and denied in part. Express' motion for a new trial is granted in part, denied in part, conditionally granted in part, and conditionally denied in part.[1]

---

1. Where the Court grants a motion for judgment as a matter of law on any claim, Rule 50(c)(1) requires it to make a "conditional" ruling on any motion for a new trial on that claim: "If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion

## A. Factual Background

In late 1990, Jeffrey Gray, an employee of Banff's Vanessa Division, designed the sweater that is the subject of this lawsuit. Trial Transcript ("Tr.") at 79–80. The sweater Mr. Gray designed conformed to the Aran style of knitting, and featured a combination of cabled patterns, traditional stitching and hand crocheted roses. *See Banff Ltd. v. Limited, Inc.*, 869 F.Supp. 1103, 1105 (S.D.N.Y.1994); Tr. at 205.[2] Banff produced both wool and cotton versions of this sweater, and sold it to a number of retailers, including Neiman Marcus, Bergdorf Goodman and Bloomingdale's. Tr. at 82, 84–85.

In December 1992, a Banff employee named Lois Adelman noticed a similar sweater in the window of one of Express' Manhattan stores. Tr. at 90. She notified Herbert Vanefsky, the President of Banff's Vanessa division. Mr. Vanefsky purchased one of Express' sweaters, and brought it back to his showroom to compare it with Banff's sweater. Tr. at 92. Although the Express sweater was made of a combination of ramie and cotton, a less expensive material than Banff used, Mr. Vanefsky was convinced that its design was identical to that of the Banff sweater. Tr. at 92, 95, 105. Mr. Vanefsky called his attorneys, and promptly filed for a copyright of Banff's sweater. Tr. at 92. Soon thereafter, in April 1993, Banff brought this action.

At trial, Banff offered evidence as to the originality of Mr. Gray's design. Kathleen Sibrizzi, a designer with seventeen years experience, testified that it was one of the most unique sweaters she had ever seen. Tr. at 316, 317. Ms. Sibrizzi also testified that the sweater sold by Express was virtually identical to that designed by Mr. Gray. Tr. at 324.

In addition, Banff offered evidence suggesting that Express' employees were aware of Banff's sweater. The evidence established that Banff's sweater was advertised in both Bergdorf Goodman's and Bloomingdale's catalogues, and that the employee in charge of purchasing sweaters for Express read these catalogues. Tr. at 83, 87, 236. The evidence also established that Banff's sweater was featured in *Glamour* magazine, another publication which Express' sweater purchaser read. Tr. at 235.

The evidence presented at trial clearly supported the jury's determination that Express infringed Banff's copyright. Notably, Express does not challenge this determination. Express challenges only the damages the jury awarded under the Copyright Act, and the jury's finding that its actions violated § 43(a) of the Lanham Act.

## B. Standards for Judgment as a Matter of Law or a New Trial

Fed.R.Civ.P. 50(a)(1) sets out the standard for granting a motion for judgment as a matter of law:

> If during a trial by jury a party has been fully heard on an issue and there is *no legally sufficient evidentiary basis* for a reasonable jury to find for·that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue (emphasis added).

The Court may only grant such a motion where "there is such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result

for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. In case the motion for a new trial has been conditionally denied, the

appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court." Fed. R.Civ.P. 50(c)(1).

2. A typical Aran sweater "consists of a centre panel with two side panels bordered with cable, signifying the ropes or lifelines on which a fisherman's life might depend." *Banff*, 869 F.Supp. at 1105 (quoting Hollingsworth, *The Complete Book of Traditional Aran Knitting*, at 6).

of sheer surmise and conjecture, or if the evidence is so overwhelming that reasonable and fair minded persons could only have reached the opposite result." *Lambert v. Genesee Hospital,* 10 F.3d 46, 56 (2d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994) (internal quotations omitted).

■ In deciding a motion brought under Rule 50, the Court may not weigh the evidence or assess the credibility of witnesses. Rather, the Court must view the evidence in the light most favorable to the non-moving party, giving it the benefit of all legitimate inferences that may be made in its favor. *See Samuels v. Air Transport Local 504,* 992 F.2d 12, 14–16 (2d Cir.1993); *Alpex Computer Corp. v. Nintendo Company, Ltd.,* 1994 WL 681752 (S.D.N.Y. Dec. 5, 1994).

■ The standard for granting a motion for a new trial under Rule 59 is less restrictive. Such a motion may be granted where the Court finds "that the jury has reached a seriously erroneous result or that the verdict is … against the weight of evidence." *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 691 (2d Cir.1983) (internal quotation omitted). In evaluating a motion for a new trial, the Court may weigh the evidence and is not required to view it in the light most favorable to the non-moving party. *See Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir.1978); *US East Telecommunications, Inc. v. US West Information Systems, Inc.,* 1993 WL 385810, *5 (S.D.N.Y. Sept. 30, 1993), *aff'd,* 38 F.3d 1289 (2d Cir.1994). However, "the grant of a new trial on weight of evidence grounds should be reserved for those occasions where the jury's verdict was egregious." *Dunlap–McCuller v. Riese Organization,* 980 F.2d 153, 158 (2d Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 290, 126 L.Ed.2d 239 (1993).

### C. Actual Damages

Express contends that there was no "legally sufficient evidentiary basis" for the jury's award of actual damages, and that it is entitled to judgment as a matter of law on Banff's claim for such damages. The Court rejects this argument, but finds that the jury's verdict was both "seriously erroneous" and contrary to the "weight of evidence." Accordingly, Express' alternative motion for a new trial on Banff's claim for actual damages is granted.

■ Section 504(b) of the Copyright Act enables a prevailing plaintiff "to recover the actual damages suffered by him or her as a result of the infringement." 17 U.S.C. § 504(b). In general, a copyright owner's actual damages are equal to the profits she would have accrued but for defendant's infringement. *See* 3 Nimmer, *Nimmer on Copyright* § 14.02[A] at 14–10 (1995).

The plain language of § 504(b) contemplates that actual damages are only available where there is a causal connection between the infringement and the copyright owner's losses. In order to sustain an award for actual damages, Banff was required to prove that it would have made the sweater sales in question *but for* the infringing activity. *See Stevens Linen Assocs., Inc. v. Mastercraft Corp.,* 656 F.2d 11, 15 (2d Cir.1981) (the inquiry on the issue of damages focuses on "what sales probably would have been made without the infringement").

■ At trial, Banff asserted that it was ready, willing and able to provide Express with sweaters of the copyrighted design. However, it offered little probative evidence suggesting that Express would actually have bought sweaters from Banff. In fact, the evidence at trial indicated that this would have been highly unlikely.

Notably, Express had never done any business with the division of Banff that designed the fisherman's sweaters. Tr. at 99. Moreover, the evidence demonstrated that the two parties sold different products at significantly different prices. Banff's sweaters were sold in high end stores like Saks Fifth Avenue and Bergdorf Goodman, whereas Express was a retailer of moderately priced merchandise. Tr. at 82, 245, 421. Banff sold the cotton version of its sweater to Bloomingdale's at a wholesale price of $63.75 per sweater. Tr. at 108. By contrast, the retail price of Express' sweater never exceeded $60, and averaged only $48.51. Tr. at 490. Thus, Banff's wholesale price was higher

than the highest price at which Express sold its sweater to the public.

Additionally, Banff offered little evidence that it could have supplied the quantity of sweaters Express needed. Express purchased between 39,262 and 40,137 of the knockoff sweaters. By contrast, Banff sold only about 400 of its cotton sweaters.[3] Tr. at 143. Banff claimed it could have supplied the necessary quantity through a factory in Turkey. However, the evidence suggested that this would not have been acceptable to Express. Because of production delays in Turkey, Express did not purchase Turkish sweaters. Tr. at 426.

There are other reasons to question Banff's ability to supply Express with the sweaters it needed. At trial, Banff offered no evidence that it had ever made any sweaters out of the ramie cotton material used in the sweaters Express sold. Moreover, the evidence indicated that, during the time Express purchased its sweaters, Banff was experiencing financial difficulties. Express ordered the infringing sweaters from Mast Industries from November 1991 until August 1992. See Pl.Ex. 19. Yet the evidence demonstrated that by the late 1980s, Banff was experiencing financial difficulties. Tr. at 116–17. Jeffrey Gray testified that by April 1992, when Banff laid him off, he knew the company was experiencing financial problems. Tr. at 211, 212. Indeed, Banff began to wind its business down in late 1992, and went out of business in January 1993. Tr. at 122, 141.

The evidence at trial provided a very weak basis for the jury's finding of actual damages. Although the Court cannot say that the jury's finding had no "legally sufficient" basis, it was both "seriously erroneous" and against the "weight of evidence." Here, the jury's verdict was indisputably egregious. From 1991 until it went out of business in 1993, Banff sold only about 400 of its cotton sweaters. It never made a sweater comparable to the infringing sweater and never demonstrated that it had the capacity to do so. The verdict of actual damages is nothing but an undeserved windfall as there was no realistic possibility that Banff would ever have

made the sales and profits awarded by the jury *but for* the Defendant's infringing conduct. Accordingly, Express' motion for a new trial on Banff's claim for actual damages is granted.

### D. Express' Profits

Section 504(b) of the Copyright Act entitles a prevailing plaintiff to "any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages." 17 U.S.C. § 504. The jury determined that Express had made $1,017,240 in profit from its infringement, and awarded Banff this amount. Express contends that the jury erred by neglecting to deduct a number of Express' indirect expenses in determining its profit. As a result, Express contends that the jury's award was grossly excessive and contrary to the law.

Under § 504(b), once a plaintiff makes a prima facie showing of the revenue the defendant's infringement produced, the burden shifts to the defendant to demonstrate its deductible expenses. See 17 U.S.C. § 504(b); In Design v. K–Mart Apparel Corp., 13 F.3d 559, 564 (2d Cir.1994). In addition to its direct costs, the defendant is entitled to a deduction for any overhead that it can prove was attributable to the infringing sales. See Manhattan Industries v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 7–8 (2d Cir.1989), cert. denied, 494 U.S. 1029, 110 S.Ct. 1477, 108 L.Ed.2d 614 (1990); Sheldon v. Metro–Goldwyn Pictures Corp., 106 F.2d 45, 54 (2d Cir.1939).

At trial, John Kyees, Express' Chief Financial Officer, offered evidence of the company's overhead expenses. Mr. Kyees advocated an accounting methodology which allocated to the infringing sweaters a fraction of every cost incurred by the Express corporation, based on the proportion of infringing sales to the company's total sales. Such an approach has been deemed acceptable in this Circuit. See In Design, 13 F.3d at 566; Dolori Fabrics, Inc. v. Limited, Inc., 662 F.Supp. 1347, 1356 (S.D.N.Y.1987).

---

**3.** Banff did not introduce any evidence regarding the number of wool sweaters it sold.

Banff's accounting expert, Dennis Staats, disputed the accuracy of the figures cited by Mr. Kyees and offered an alternative approach to computing Express' deductible expenses. This method, known as the incremental approach, examines whether each category of expense is "sensitive" to the infringing sales. Where it does not appear that the infringing sales significantly contributed to an increase in a given expense, no deduction is permitted for that expense.

The incremental approach is consistent with the Second Circuit's command that "overhead which does not assist in the production of the infringement should not be credited to the infringer; that which does, should be." *Sheldon*, 106 F.2d at 54. This approach has been accepted by this Court. *See, e.g., Polo Fashions, Inc. v. Extra Special Prods., Inc.,* 1980 WL 30287 (S.D.N.Y. Mar. 5, 1980) (where the infringing garment accounted for only about one percent of the defendant's total business, no deduction permitted because the infringing sales had no incremental effect on overhead); *see also ABKCO Music, Inc. v. Harrisongs Music,* 508 F.Supp. 798, 801 (S.D.N.Y.1981), *modified on other grounds,* 722 F.2d 988 (2d Cir.1983) (disallowing deductions for expenses not shown to be attributable to the infringing products).

After hearing all the evidence, the jury found that the infringing sweaters accounted for $1,947,046 in gross revenues. From this amount, the jury deducted $929,806 in costs it determined Express had proved. Approximately $900,470 of this amount represented the cost of the sweaters themselves. As Banff conceded additional freight costs of $12,837, it appears that the jury decided to deduct only about $16,499 in all other costs.

The jury's decision was neither contrary to law, nor against the weight of evidence. Express bore the burden of proving its indirect costs, and of demonstrating that such costs were attributable to its infringement. Given

Mr. Staats' testimony, the jury was entitled to find that Express had not met this burden. It was not unreasonable for the jury to accept Mr. Staats' testimony where, as here, the infringing sweaters comprised only a tiny fraction of the defendant's total business, and virtually no evidence was presented demonstrating that the indirect costs were related to the production or sale of these sweaters. Accordingly, this part of Express' motion for judgment as a matter of law is denied, as is its motion for a new trial on this claim.[4]

### E. Trade Dress Infringement

■ To demonstrate trade dress infringement under § 43(a) of the Lanham Act, this Circuit has generally required a plaintiff to show (1) that the appearance of its product is distinctive of its source, and (2) that consumers will likely confuse its product with defendant's product. *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 31 (2d Cir.1995). Express contends that the evidence presented at trial was not "legally sufficient" to demonstrate that it infringed Banff's trade dress, and that it is entitled to judgment as a matter of law on this issue. In light of the recent Second Circuit decision in *Knitwaves, Inc. v. Lollytogs, Ltd.,* 71 F.3d 996 (2d Cir.1995), Express' motion for judgment as a matter of law on Banff's trade dress claim is granted.

In *Knitwaves,* the Second Circuit clarified the showing necessary to demonstrate that a product's features identify its source. In holding that plaintiff's sweater designs did not qualify for trade dress protection, the Court noted that the proper inquiry was, "whether [the designs were] 'likely to serve *primarily* as a designator of origin of the product.'" *Knitwaves,* 71 F.3d at 1008 (quoting *Duraco Prods., Inc. v. Joy Plastic Enterprises, Ltd.,* 40 F.3d 1431, 1449 (3d Cir.1994)) (emphasis added). The Court then stated:

---

**4.** The Court also rejects Express' claim that the jury was required to deduct income taxes it paid from its gross receipts. Consistent with the Second Circuit's mandate in *In Design,* 13 F.3d at 566, the Court instructed the jury that "taxes should not be deducted [as expenses from gross receipts] if you find that Express itself intention-ally or willfully infringed." Tr. at 833. In declining to deduct Express' taxes, the jury implicitly found that Express intentionally infringed Banff's copyright. This was a permissible inference for the jury to draw from the evidence presented at trial.

As [plaintiff's] objective in the two sweater designs was *primarily* aesthetic, the designs were not *primarily* intended as source identification. Those sweater designs therefore fail to qualify for protection of trade dress inherent in product design.

*Knitwaves,* 71 F.3d at 1008 (emphasis added).

*Knitwaves* makes it clear that, in order to prevail on a claim for trade dress infringement, a plaintiff must do more than demonstrate that the appearance of its product serves some source identifying function. It must demonstrate that the primary purpose behind the design was to identify its product's source. In the case at hand, there is absolutely no evidence that Banff chose its design primarily to identify the source of its product. In fact, it is clear that Banff, like the plaintiff in *Knitwaves,* chose its design primarily for aesthetic reasons. As a result, the jury's verdict as to Banff's trade dress claim cannot stand.[5]

F. False Designation of Origin

Express contends that the jury had no basis for concluding that it violated the Lanham Act by falsely designating the origin of its sweaters. Once again, this part of Express' motion for judgment as a matter of law is granted.

■ Section 43(a) of the Lanham Act makes it unlawful to sell a product in a manner that conveys a "false designation of origin." *Stormy Clime Ltd. v. ProGroup, Inc.,* 809 F.2d 971, 974 (2d Cir.1987). Among other things, this section prohibits the practice of "reverse passing off," in which a company sells another's product as its own. *See Waldman Publishing Corp. v. Landoll, Inc.,* 43 F.3d 775, 780 (2d Cir.1994).

■ To prevail on a claim for "reverse passing off," a plaintiff must demonstrate: "(1) that the work at issue originated with the plaintiff; (2) that [the] origin of the work

was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *Lipton v. The Nature Co.,* 71 F.3d 464, 472 (2d Cir.1995).

■ The question before the Court is whether, by proving that Express placed its "Compagnie Internationale Express" label on the sweaters it sold, Banff established that Express falsely designated the origin of the sweaters. A review of the controlling case law on this point reveals that Banff's proof was not legally sufficient to establish false designation of origin.

In *Waldman,* the Second Circuit held that the "reproduction of a work with a false representation as to its creator" supports a finding of false designation of origin. *Waldman,* 43 F.3d at 781. *Waldman* involved a publisher that had copied a line of children's books. The Court found that by publishing the copied books and designating its own authors as their creators, the defendant had falsely designated the origin of the works.

Prior to *Waldman,* however, the Second Circuit indicated that a defendant's use of a false copyright notice was not enough to constitute false designation of origin. *See Kregos v. Associated Press,* 937 F.2d 700, 710–11 (2d Cir.1991). In *Kregos,* the Court rejected the claim that the defendants, Sports Features, Inc. and the Associated Press, violated § 43(a) by copying a sports form created by plaintiff and publishing it with Sports Features' copyright notice. The Court found that plaintiff's claim was merely a copyright claim in disguise, and declared that it would "reject [plaintiff's] attempt to convert all copyright claims into Lanham Act violations." *Id.* at 711.

Recently, in *Lipton,* the Second Circuit reaffirmed and clarified the scope of its holding in *Kregos. Lipton* involved defendants who copied a compilation of "terms of venery"[6] contained in a book written by plain-

---

5. As Banff offered no evidence that it designed its sweater *primarily* to identify its product's source, the jury's trade dress verdict is clearly against the "weight of evidence." Accordingly, if the Court's decision to grant this part of Express' Rule 50 motion is reversed on appeal, the Court

finds that a new trial should be granted on Banff's trade dress claim.

6. "Terms of venery" is a phrase used by the plaintiff in *Lipton,* and means "collective terms

tiff, and placed them on a variety of posters and other products. The Court explicitly rejected the argument that the defendants violated § 43(a) by placing false copyright notices on the infringing products. It held that, "as a matter of law, a false copyright notice alone cannot constitute a false designation of origin within the meaning of § 43(a) of the Lanham Act." *Lipton*, 71 F.3d at 473–74.

The Second Circuit's decisions in *Kregos* and *Lipton* are not inconsistent with its holding in *Waldman*. In *Waldman*, the Court found a false designation of origin because the defendant made an affirmative misrepresentation regarding the creator, or originator of its books.[7] In *Kregos* and *Lipton*, the defendants falsely represented that they held copyrights to certain works; they did not make any false claims regarding who originated the works. In fact, in *Kregos* the Court explicitly noted that, "[plaintiff] could complain ... if Sports Features unfairly competed with him by falsely claiming that its form was originated by some well-known baseball player." *Kregos*, 937 F.2d at 710.

The fact setting here is more analogous to *Kregos* and *Lipton* than it is to *Waldman*. By placing the "Compagnie Internationale Express" label in the sweaters it sold, Express did not represent that it had designed these sweaters. Rather, like the defendants in *Kregos* and *Lipton*, Express only represented that it had the right to sell the fisherman's sweaters. The evidence at trial indicated that retail clothing stores routinely place their labels on clothing sold in their stores. Tr. at 428. In light of *Kregos* and *Lipton*, the Court declines to find this widely accepted practice actionable under § 43(a) of the Lanham Act.

Accordingly, there was no "legally sufficient evidentiary basis" for the jury's verdict on the claim for false designation of origin.[8]

G. Conclusion

Express' motion for judgment as a matter of law on Banff's claim for actual damages under the Copyright Act is denied. However, Express' motion for a new trial on this claim is granted. The jury's award of Express' profits under the Copyright Act will not be disturbed. Express' motion for judgment as a matter of law on Banff's trade dress claim is granted. Should this holding be reversed on appeal, Express is entitled to a new trial on this claim. Finally, Express' motion for judgment as a matter of law on Banff's claim for false designation of origin is granted.[9] However, in the event that this holding is reversed on appeal, the Court finds that no new trial is warranted.

SO ORDERED.

---

for identifying certain animal groups." *Lipton*, 71 F.3d at 467 n. 2, 475.

**7.** There is some language in *Waldman* which suggests that, even in the absence of any affirmative misrepresentation, § 43(a) prohibits a defendant from publishing another's work without attribution. *See Waldman*, 43 F.3d at 782 ("It is fair to say that it would constitute a false designation of origin to publish without attribution to its author a work that is original enough to deserve copyright protection"). This *dictum* appears inconsistent with the Second Circuit's reasoning in *Kregos*, and the Court declines to follow it.

**8.** The Court's decision on this claim is mandated solely by its understanding of Second Circuit jurisprudence. The Court does not believe that the jury made any erroneous factual findings regarding this claim. Accordingly, if the Court's decision to grant this part of Express' motion for judgment as a matter of law is reversed, a new trial on this claim would not be warranted.

**9.** Because the Court has disposed of both of Banff's § 43(a) claims, Banff's request for attorney fees under the Lanham Act must also be denied.