**Luis LIRIANO, Plaintiff,**

v.

**HOBART CORPORATION, Defendant.**

**HOBART CORPORATION, Third–Party Plaintiff,**

v.

**SUPER ASSOCIATED, Third-party Defendant.**

No. 94 Civ. 5279 (SAS).

United States District Court, S.D. New York.

Nov. 13, 1996.

Abby J. Resnick, Trolman, Glaser & Lichtman, P.C., New York City, for Plaintiff.

Saul Wilensky, Robert D. Monnin, Carl J. Schaerf, Lester Schwab Katz & Dwyer, New York City, for Defendant.

William M. Kimball, New York City, for Third–Party Defendant.

*Opinion and Order*

SCHEINDLIN, District Judge.

Defendants Hobart Corporation ("Hobart") and Super Associated ("Super") filed motions for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure on October 21, 1996. On September 27, 1996, plaintiff moved for amendment of the retrial verdict. For the reasons set forth below, defendants' motion is denied and plaintiff's motion is granted.

## FACTUAL BACKGROUND

This lawsuit stems from on-the-job injuries Liriano sustained when his hand was caught in a commercial meat grinder in 1993. As a result of this accident, Liriano suffered an amputation of his dominant right hand and part of his forearm. At the time Liriano suffered these injuries, he was seventeen years old and employed by Super, a grocery store in the Bronx.

The Model 4046 meat grinder that injured Liriano was designed by Hobart in 1961. The machine was equipped with a fixed pan and guard assembly. No warning labels concerning use of the meat grinder without the guard were affixed to the machine when it was sold or at any time thereafter. All parties concede that the guard was not on the machine at the time of the accident.

Liriano sued Hobart in 1994, alleging that Hobart was negligent for failing to warn

users of the dangers of operating its machine without a guard. Hobart denied any culpability, insisting that no warning was required because removal of the guard was not foreseeable and because the dangers of operating the machine without a guard were obvious. Hobart also filed a third-party complaint against Super, contending that if Hobart was liable, then Super's removal of the guard constituted an intervening event which caused the accident.

A jury trial was held from January 29 to February 8, 1996. The jury found for Liriano and awarded him $650,000. Pursuant to this Court's Opinion and Order of July 23, 1996,[1] a retrial was held to determine the existence and extent of Liriano's comparative negligence. On September 9, 1996, the retrial jury found in a special verdict that plaintiff was 33.3% comparatively negligent, and awarded damages in the total amount of $1,352,500.

## APPLICABLE LEGAL STANDARD

The standard for granting a motion for judgment as a matter of law is a strict one. *See Stubbs v. Dudley,* 849 F.2d 83, 85 (2d Cir.1988), *cert. denied,* 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989). A motion under Rule 50(b) may be granted only:

> where there is a complete absence of evidence supporting the verdict such that the jury's findings could only have been the result of sheer surmise and conjecture or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against [the movant].

*Ware v. ABB Air Preheater, Inc.,* 1995 WL 574464, at *1 (W.D.N.Y.1995) (citing *Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992)). In evaluating such a motion, "the Court may not weigh the evidence or assess the credibility of witnesses. Rather, the Court must view the evidence in the light most favorable to the non-moving party." *Banff Ltd. v. Express, Inc.,* 921 F.Supp. 1065, 1068 (S.D.N.Y.1995). *See also Doctor's Associates, Inc. v. Weible,* 92 F.3d 108, 111–12 (2d Cir.1996).

## DISCUSSION

### I. Defendants' Arguments

Defendants' current arguments closely track those made in support of their previous Rule 50(b) motion following the first trial. First, Super maintains that because Hobart owed plaintiff no duty to warn as a matter of law, a jury should not be allowed to determine the extent of Hobart's liability to plaintiff. Second, Super argues that the Court should have charged the retrial jury that they could find plaintiff completely liable for his injuries, thus finding defendants not liable. Third, Super maintains that judgment as a matter of law must be granted as there was insufficient evidence of Hobart's fault presented at the second trial. Finally, Hobart argues that the instant motion should be granted because the testimony of plaintiff's expert should have been stricken from the record during the retrial.

### II. Hobart's Legal Duty to Warn Liriano

██ The Court has already addressed the existence of Hobart's legal duty to warn Liriano:

> Whether Hobart owed a duty to Liriano turned on the foreseeability of the danger involved and the obviousness of the risk in operating the machine without a guard. Where varying inferences can be drawn from the facts, the questions of foreseeability and obviousness are for the jury. *See Travelers Ins. v. Federal Pacific Electric Co.,* [211 A.D.2d 40] 625 N.Y.S.2d 121, 123 (1st Dep't), *lv. denied,* 86 N.Y.S.2d 712 [635 N.Y.S.2d 949, 659 N.E.2d 772] (1995) (foreseeability); *Bolm v. Triumph Corp.,* 33 N.Y.2d 151, 156 [350 N.Y.S.2d 644, 305 N.E.2d 769] (1973) (obviousness). In the case at hand, reasonable people could disagree about both foreseeability and obviousness; thus, it was for the jury to decide whether Hobart had a duty to warn.

*Liriano v. Hobart et al.,* No. 94 Civ. 5279, 1996 WL 304337, at *5 n. 3 (S.D.N.Y. July 23, 1996). Despite this ruling, Hobart repeats its contention that the threshold question of whether it owed a legal duty to plaintiff is a

---

1. *Liriano v. Hobart Corp. v. Super Associated,* No. 94 Civ. 5279, 1996 WL 304337 (S.D.N.Y.).

legal question to be decided by the Court, not a question of fact to be determined by the jury. This point of law is simply too well established to discuss at great length: whether a duty to warn exists is a question of law when the facts are undisputed and only one inference may be drawn from them, but it is for the jury when varying inferences may be drawn. As Chief Judge Cardozo stated many years ago, "[t]he risk reasonably to be perceived defines the duty to be obeyed." *See Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 344–45, 162 N.E. 99 (1928). Defendants point to no case law that contradicts the Court's prior ruling on this issue.

### III. The Retrial Jury Charge

■ Super argues the retrial jury had inadequate legal guidance regarding the apportionment of liability because the Court improperly failed to charge the jury that it could find the plaintiff 100% contributorily negligent and find the defendants not liable. In other words, Super argues that the retrial jury should have been able to decide whether defendants were liable at all. However, this argument ignores the limited purpose of the second trial in this case. The July 23 Order held that the initial verdict concerning defendants' liability was proper, and that retrial was required only to determine the existence and extent of Liriano's comparative negligence. *See Liriano v. Hobart et al.*, No. 94 Civ. 5279, 1996 WL 304337, at *8–9 (S.D.N.Y.). The issue of Hobart's liability was beyond the scope of the retrial jury, and it would have been improper to charge the jury otherwise.

■ Liberally construed, defendants' arguments regarding the retrial jury charge challenge the Court's decision to hold a limited-purpose retrial. Rule 59(a) of the Federal Rules of Civil Procedure grants a district court the authority to hold a new trial on "all or part of the issues ... in an action in which there has been a trial by jury." The Second Circuit has confirmed that a district court may retry a specific issue such as a plaintiff's comparative negligence pursuant to Rule 59(a) where "it clearly appears that [that issue is] sufficiently distinct and separable from the others [and] that trial of [that issue] alone may be had without injustice." *United*

*States v. Meridian Const. Corp.*, 95 F.3d 153, 171 (2d Cir.1996) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 23 (2d Cir. 1996) (*per curiam*) (internal quotations and citations omitted). *See also Akermanis v. Sea Land Svc. Inc.*, 688 F.2d 898, 907 (2d Cir.1982). In light of these cases and Rule 59(a), this Court had the authority to conduct a limited purpose retrial.

### IV. Sufficiency of Evidence to Support Finding of Hobart's Liability

■ Super asserts that plaintiff did not present sufficient evidence to sustain the damages verdict he obtained at the second trial. In order to prevail on such a claim Super must demonstrate the "complete absence" of supporting evidence. *See Ware*, 1995 WL 574464, at *1. Viewing the evidence in the light most favorable to plaintiff, there was more than sufficient evidence to support the damages awarded by the jury.

### V. Admissibility of Plaintiff's Expert Witness's Testimony

Hobart renews its earlier objections to the admission of the testimony of plaintiff's expert witness Gary Robinson, citing Fed. R.Evid. 702 and *Daubert et al. v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) as interpreted by *Cummins v. Lyle Industries*, 93 F.3d 362 (7th Cir.1996). I have already addressed this issue in some depth, first in a Memorandum Opinion dated January 29, 1996, and then in the Opinion and Order dated July 23, 1996. Nor is the Seventh Circuit's interpretation of Rule 702 and *Daubert* binding on courts of this jurisdiction. Nevertheless, I will address the question once again because of the importance of the issue raised in this developing area of the law.

#### A. The Current Second Circuit Interpretation of Fed.R.Evid. 702 and *Daubert*

■ I begin by reviewing this Circuit's recent interpretation of *Daubert* and Fed. R.Evid. 702 in *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir.1995) (citation omitted):

[O]ur decision today is informed by the principles underlying the Supreme Court's holding [in *Daubert* ]. First, by loosening the strictures on scientific evidence set by *Frye*, *Daubert* reinforces the idea that there should be a presumption of admissibility of evidence. Second, it emphasizes the need for flexibility in assessing whether evidence is admissible. Rather than using rigid "safeguards" for determining whether testimony should be admitted, the Court's approach is to permit the trial judge to weigh the various considerations pertinent to the issue in question. Third, *Daubert* allows for the admissibility of scientific evidence, even if not generally accepted in the relevant scientific community, provided its reliability has independent support. Finally, the Court expressed its faith in the power of the adversary system to test "shaky but admissible" evidence and advanced a bias in favor of admitting evidence short of that solidly and indisputably proven to be reliable.

*Borawick,* then, stands squarely for the proposition that *Daubert* has relaxed the standards controlling the admission of expert testimony admissibility rather than tightened them.[2]

### B. Gary Robinson's Qualifications and Testimony

Gary Robinson is a safety consultant with 40 years of experience analyzing machine guarding, safety warnings and related safety issues. Trial Transcript ("Tr.") at 17. Robinson has been qualified as an expert in those topics in many federal and state courts and has testified in other cases against Hobart. Tr. at 21–22. He worked as a safety engineer for General Motors for ten years, and was the Director of Safety Engineering for five of those years. Tr. at 194. While at General Motors, Robinson was responsible for drafting warnings and instructions accompanying machinery and equipment. Tr. at 196–97. He has taught in the field of industrial safety and served as an officer of several professional associations in the field. Also, Robinson has worked as a consultant to the OSHA Training Institute and has analyzed between 50 and 100 accidents involving meat grinders, including other accidents involving Hobart meat grinders. Tr. at 205.

A summary of the salient points of Robinson's testimony, other than that regarding his own qualifications, follows. First, Robinson presented a brief history of industrial warning standards in the United States and stated that many manufacturers were using warnings on industrial machines such as meat grinders at the time that Hobart designed and manufactured the machine that injured Liriano. Tr. at 223–227. Second, Robinson stated that in his opinion, the Model 4046 meat grinder was defective because the risk of injury to its users was not reduced to an acceptable level and because of "the failure to have an adequate warning." Tr. at 252–53. Robinson stated that the basis of this opinion was his "background and experience". Tr. at 252. Finally, Robinson testified that in his opinion, it was foreseeable that the guard would be removed from Hobart's meat grinder. Tr. at 310. Again, this opinion was based on Robinson's personal experience. *Id.* Robinson was asked on direct examination if additional testing was required beyond his personal inspection of the machine and premises in order to support his opinion that the meat grinder was defectively manufactured. He answered "absolutely not". Tr. at 312.

### C. Applicability of *Daubert*

 The initial question presented by Robinson's testimony is whether the *Daubert* test should be invoked to determine its ad-

---

2. Not all readers of *Daubert* agree with this interpretation of the case's central holding. *See, e.g.,* Michael Hoenig, *Expert Opinions and Untested Alternatives*, N.Y. Law Journal, Oct. 29, 1996, at 3 ("It seems clear that many courts are taking seriously *Daubert's* admonition that judges are gatekeepers of expert proofs and that reliability and trustworthiness are keys to opening the admissibility gate."). *See generally Expert Testimony After Daubert,* SA85 ALI–ABA 353 (June 24, 1996) ("Despite [*Daubert*'s] clear holdings, some post-*Daubert* writings, including some court opinions, have pushed the district courts in the direction of a more activist role in which the court conducts its own trial of the experts and excludes experts whom the court believes are wrong because their underlying methodology or evidence is controversial.") (citations omitted).

missibility.[3] Properly understood, the *Daubert* analysis applies to cases involving unique, untested, or controversial methodologies or techniques. *Compton v. Subaru of America, Inc. et al.,* 82 F.3d 1513, 1518–19 (10th Cir.1996). It is not appropriate to invoke the *Daubert* test in cases where expert testimony is based solely on experience or training, as opposed to a methodology or technique. Indeed, it would be impossible to do so. Expert opinion based on personal experience cannot always be evaluated on the basis of "rate of error", "peer review" or "general acceptance" in the relevant scientific community. Yet such opinions may be as valuable to the trier of fact as those opinions that can be readily gauged in such terms.

■ Defendants rely on *Cummins v. Lyle Industries,* 93 F.3d 362 (7th Cir.1996) (Easterbrook, J.) to support their argument that Robinson's testimony should have been precluded under Rule 702 and *Daubert.* *Cummins* involved a worker who severed three fingers while operating a trim press and subsequently brought design defect and inadequate warning claims against the manufacturer. The Seventh Circuit ruled that the district court had acted within its discretion when it decided to exclude expert testimony predicated on untested scientific observations. Specifically, the expert (Dr. Thomas Carpenter) was prepared to testify as follows concerning the feasibility of alternative designs for the braking system on the trim press: (1) the trim press ought to have been equipped with a "non-contact" limit switch instead of the mechanical limit switch actually installed; (2) a parallel time relay could have been wired in order to shut down the trim press if the limit switch failed; and (3) the limit switch installed in the trim press ought to have had a longer useful cycle life. In addition, Dr. Carpenter was prepared to testify that the warnings and the instruction manual for the trim press were inadequate because they did not describe many of the functions of the trim press. *See Cummins,* 93 F.3d at 365–66.

The district court's ruling to exclude Dr. Carpenter's testimony was in part based on findings that he relied on what amounted to unreliable hearsay to form some of his opinions. Furthermore, Dr. Carpenter testified that he had no practical knowledge concerning the use of the alternative components he suggested in an industrial, machine-tool production environment. Also significant to the court was the fact that Dr. Carpenter had never tested his alternative designs or warnings, or read any studies of such tests. *Id.* at 368–69.

Dr. Carpenter's opinion was based on his analysis of the trim press and his expertise in the specialized area of the design of such machines. His opinions were technical in nature, and would have been expressed in technical terms had Dr. Carpenter testified. For example, Dr. Carpenter would have rendered an opinion on the degree to which his proposed alternative design was compatible with existing systems and circuits, the relative efficiency of the two designs, the short- and long-term maintenance costs associated with the alternative design, the ability of the purchaser to service and to maintain the alternative design, the relative costs of installing the new design, and the effect that the alternative design would have on the price of the machine. The Circuit court concluded that "many of these considerations are product- and manufacturer-specific, and cannot be determined reliably without testing." *Id.* at 369.

*Cummins* stands for the proposition that after *Daubert,* "Rule 702 is designed to ensure that, when expert witnesses testify in court, they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Id.* (citations omitted). Gary Robinson testified that his opinions were based on his personal experience in the field of safety engineering. Robinson also

---

3. Under the *Daubert* test, a court assesses the relevance and reliability of expert testimony by considering, among other factors, (1) whether the expert's theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted. *See Daubert,* 509 U.S. at 591–93, 113 S.Ct. at 2795–97. In considering these factors, "[t]he focus ... must be solely on principles and methodology, not on the conclusions they generate." *Id.* at 595, 113 S.Ct. at 2797.

testified that testing was not required to ascertain the reliability of his opinion that a warning was necessary on the Hobart meat grinder to reduce the risk of injury of its users to an acceptable level. Where a witnesses' opinion is not the product of scientific methodology or systematic analysis, but rather a conclusion based on years of accumulated learning and insight, *Cummins* does not apply and reliability should be assessed without resort to the *Daubert* factors.

This holding is consistent with several recent appellate court opinions in this field. Where courts have found an expert opinion to be based on personal experience alone, *Daubert* has not been applied. See *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1518 (10th Cir.1996) ("application of the Daubert factors is unwarranted in cases where expert testimony is based solely upon experience or training") (citation omitted). Where expert opinion has been presented as the product of scientific method or analytic thought, courts have applied *Daubert.* See *Peitzmeier v. Hennessy Industries Inc.*, 97 F.3d 293, 297 (8th Cir.1996) (applying *Daubert* factors to expert alternative design testimony based on "general engineering principles"); *Braun v. Lorillard Inc. et al.*, 84 F.3d 230, 233 (7th Cir. June 14, 1996) (applying *Daubert* to expert testimony regarding methods of testing for the presence of asbestos in human tissues).

### D. Admissibility of Robinson's Testimony

■ To be admitted under the traditional (non-*Daubert* ) analysis, Robinson's testimony must have assisted the trier of fact "to understand the evidence or to determine a fact in issue". Fed.R.Evid. 702.[4] Rule 702's "helpfulness" standard requires a valid link

between the expert's testimony and the jury's factual inquiry as a precondition to admissibility. *See Daubert*, 509 U.S. at 591, 113 S.Ct. at 2795. Earlier in the course of these proceedings, I found that "[t]here is no question that Robinson's testimony assisted the jury in determining facts pertinent to the case." *Liriano v. Hobart et al.*, No. 94 Civ. 5279, 1996 WL 304337, at *4 (S.D.N.Y. June 6, 1996). There was a close fit between Robinson's testimony and the material facts in dispute. Defendants' most recent reiteration of their earlier arguments have not changed my views. Based on the foregoing analysis of the Federal Rules of Evidence as interpreted by the cases cited above, I find that Robinson's testimony was properly admitted at trial.

### VI. Plaintiff's Motion to Amend Verdict

■ On September 27, plaintiff moved to amend the retrial verdict to include his hospital bill of $21,252.34. Plaintiff argues that the hospital bill was admitted into evidence during the retrial, and correctly notes that the retrial jury found that Liriano suffered no past medical expenses as a result of defendants' conduct.[5]

Because this is a diversity action, the substantive law of New York is applied to determine the question of whether the court may properly grant plaintiff's motion to amend the retrial verdict. *See Erie R. Co. v. Tomkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Imbrogno v. Chamberlin*, 89 F.3d 87, 89 (2d Cir.1996). Plaintiff relies on *Woodson v. New York City Housing Authority*, 10 N.Y.2d 30, 32, 217 N.Y.S.2d 31, 176 N.E.2d 57 (1961), which held the trial court properly directed judgment for plaintiff where plaintiff's fully corroborated testimony

---

4. "The [Federal] Rules [of Evidence] were designed to depend primarily upon lawyer-adversaries and sensible triers of fact to evaluate conflicts. The Judge was intended to serve the limited role of facilitator rather than controller." Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 631 (1991). *Daubert* may not be talismanically invoked against the use of all untested expert opinions, as defendants attempt. The admissibility of the evidence offered by plaintiff's expert must be evaluated with these principles in mind.

5. The retrial jury verdict sheet asked the following question as to the issue of plaintiff's damages: "What do you find was the amount of damages (without reduction for any percentage of the responsibility that may be chargeable to the plaintiff), if any, sustained by Luis Liriano" and responded with regard to each category: "Past pain and suffering: $300,000", "Future pain and suffering: $400,000", "Past Medical Expenses: $0", "Future Medical Expenses: $572,000", "Past Lost Wages: $[ ]33,000", "Future Lost Wages: $47,500", "Total: $1,352,500".

was uncontradicted and did not give rise to conflicting inferences and where defendant offered no evidence. *Woodson*, however, does not directly address the issue of when a court may properly amend a jury's verdict once it has been rendered.

Two New York cases cast doubt on a court's authority to amend the verdict as plaintiff requests. *Romano v. City of Syracuse*, 91 A.D.2d 1197, 459 N.Y.S.2d 186, 187 (4th Dep't 1983), involved a personal injury action in which the jury found, *inter alia*, that plaintiff had suffered no lost earnings but was entitled to reimbursement for his three-week hospital confinement. The trial court found those answers inconsistent based on the evidence in the record and directed that the verdict be increased to compensate plaintiff for his lost salary. The Appellate Division reversed, finding that the trial court could not amend the verdict without first giving the jury an opportunity to correct its error. A retrial was ordered solely on the issue of the damages sustained by plaintiff.

This same question was addressed more recently in *Fischl v. Carbone*, 199 A.D.2d 463, 606 N.Y.S.2d 53, 55 (2d Dep't 1993). Finding the jury's verdict contrary to the weight of evidence, the trial court reduced the amount awarded for past pain and suffering and increased the amount awarded for future pain and suffering. The Appellate Division found that the trial court lacked the power to unilaterally change the jury's verdict and noted that the proper procedure for the trial court to follow was:

> [I]f it found that the verdict did not deviate materially from what would be [reasonable] compensation, to deny the motion, or, if it did deviate materially, to direct a new trial unless the parties stipulated to an appropriate additur or remittitur, or both.

*Id.*

■ These three cases provide adequate guidance to resolve plaintiff's motion. The rules of *Romano* and *Fischl* indicate that a trial court may not unilaterally amend a jury's findings on the question of damages, even if that verdict deviates materially from what would be reasonable compensation. Rather, the proper procedure is to direct a new trial. However, *Woodson* indicates that a trial court may direct a verdict where plaintiff's evidence is uncontroverted, does not give rise to conflicting inferences and where defendant presents no contradicting evidence or argument.

Because the retrial jury's findings as to Liriano's past medical expenses materially deviated from what would be reasonable compensation, *Romano* and *Fischl* indicate that a new trial on that specific issue is required. However, because the plaintiff's evidence regarding the hospital bill meets the *Woodson* standards for directed judgment, no such new trial need actually be held.

One final matter remains. Defendant Super asserts that although the hospital bill was properly admitted at the first trial, it may not be deemed admitted at the second trial. On September 4, 1996, I ruled that evidence presented at the first trial must be used during the retrial to be deemed admitted. *See* Trial Transcript at 69. However, Liriano's medical bill was "used" within the meaning of the September 4 ruling during the retrial. Specifically, it was presented with other hospital records to Dr. Kristjan T. Ragnarsson, plaintiff's treating physician, on September 5, 1996. It is evident from Dr. Ragnarsson's testimony that he reviewed the hospital records. Trial Transcript at 189, 204 and 208. Thus, the bill was admitted for the jury's consideration.

## CONCLUSION

For the foregoing reasons, defendants' motions for judgment as a matter of law are denied. Plaintiff's motion to amend the retrial verdict to include a past medical expenses award of $21,252.32 is granted, and it is hereby ordered that the judgment entered should reflect that addition.

SO ORDERED.