**LESPORTSAC, INC., Plaintiff,**

v.

**K MART CORPORATION, Defendant.**

**No. 84 CV 2720.**

United States District Court,
E.D. New York.

July 11, 1984.
On Motion to Modify Injunction,
Sept. 18, 1984.

Kuhn, Muller & Bazerman, New York City, for plaintiff; Steven H. Bazerman, Julius Rabinowitz, New York City, of counsel.

Kirchstein, Kirchstein, Ottinger & Israel, New York City, Alexander & Zalewa, Ltd., Chicago, Ill., for defendant; Alan Israel, Martin W. Schiffmiller, New York City, James D. Zalewa, Mark W. Croll, Chicago, Ill., of counsel.

McLAUGHLIN, District Judge.

Plaintiff seeks a preliminary injunction prohibiting defendant from infringing plaintiff's trademark and trade dress for lightweight luggage and handbags. The parties submitted affidavits and memoranda in support of their positions, and the Court heard testimony on July 6, 1984. For the reasons developed below, the preliminary injunction shall issue.

### Facts

Plaintiff sells a line of lightweight luggage made of parachute nylon and trimmed in cotton carpet tape. The bags are carried by means of cotton webbing of the same color as the carpet tape trim.

The zippers used to close the bags are color-coordinated with the bags themselves, and pulled by means of hollow rectangular metal sliders. Many of the bags also have separate zippered compartments employing the same hollow metal sliders. The most distinctive feature of plaintiff's bags is the repetitive printing of the elliptical logo on the cotton trim of each bag. The logo is a brightly colored circle followed by letters with the name, "LeSportsac," enclosed within an elongated ellipse of contrasting color. The letters are the same color as the bag.

Defendant's bags are remarkably similar to those manufactured by plaintiff. They, too, are made of parachute nylon, trimmed in cotton tape, and characterized by color coordinated zippers with hollow rectangular zipper pulls. Defendants sell their bags under the name "di paris sac." The name appears in an elongated ellipse in which the French word is set against a background of contrasting color. On the ellipse appears a miniature Eiffel Tower. Additionally, the letters themselves are, in most instances, the same color as the bag. Most significantly, defendant's logo is printed repetitively across the trim in the same style as plaintiff's.

Plaintiff has been marketing its lightweight nylon luggage since July, 1976, and has sold approximately 5,000,000 bags—for over 50 million dollars—both in the United States and abroad. At the hearing, K Mart adduced testimony that its line of bags was purchased in the Far East sometime around November 1983. The bags were offered for sale early in 1984.

Plaintiff's bags generally sell for significantly more than defendant's; nevertheless plaintiff does have several "factory outlet" stores at which the prices of plaintiff's goods are reduced so they sell at approximately the same price as defendant's.

Plaintiff asserts that defendant has infringed plaintiff's rights in the trademark and trade dress of its goods. Specifically, plaintiff alleges that certain bags sold by defendant have "the same configuration, size and fabric pattern as plaintiff's, [and] the same trim, zipper placement, zipper design, and the like. The webbing has a

repeating elliptical design, similar to and similarly positioned as plaintiff's eliptical [sic] design." Complaint ¶ 15, Ex. C.

The allegedly offending bags are a handbag, a totebag, a backpack and a small travel bag with shoulder straps. Plaintiff contends that they are unlawful imitations, respectively, of plaintiff's models no. 7124, 7150, 7192 and 7183. Both plaintiff's and defendant's bags were submitted to the Court as plaintiff's exhibits 1 and 14–20.

### Discussion

■ To obtain an injunction, plaintiff is required to demonstrate the likelihood of irreparable injury and either: 1) likelihood of success on the merits or 2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in plaintiff's favor. *Dallas Cowboys Cheerleaders v. Pussycat Cinema*, 604 F.2d 200, 206–07 (2d Cir.1979). In an action for trademark infringement, satisfying that test involves showing that there is a likelihood of confusion between plaintiff's and defendant's marks. *P. Daussa Corp. v. Sutton Cosmetics (P.R.), Inc.*, 462 F.2d 134, 136 (2d Cir.1972).

Defendant contends plaintiff's bags contain numerous functional features which are unprotectible. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). As the Supreme Court stated recently, "[i]n general terms, a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Laboratories v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10, 102·S.Ct. 2182, 2186 n. 10, 72 L.Ed.2d 606 (1982).

■ While the shape of the product is in the public domain and is not protectible, its packaging, or trade dress, is protectible if it is nonfunctional and has acquired a secondary meaning. *See Ives Laboratories v. Darby Drug Co., Inc.*, 601 F.2d 631 (2d Cir.1979); *LeSportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602, 606 (S.D.N.Y. 1979).

■ Plaintiff adduced evidence at the hearing that its unique features are non-functional, i.e., that there are numerous ways to manufacture lightweight nylon luggage other than that employed by plaintiff. There is no need, for example, to have cotton webbing on the outside seam of the bag, or to have outer zippered pockets. Similarly—and more significantly—there is no need to have hollow rectangular zipper pulls.

Defendant introduced a plethora of exhibits whose various designs undermine its own functionality argument. All are nylon bags, yet none bears the combination of design features used by plaintiff and imitated by defendant. As the Court stated in *LeSportsac, Inc. v. Dockside Research Inc., supra*, 478 F.Supp. at 608: "[T]he entire composition of [plaintiff's] bags tend [sic] to lend it a particular 'look' which apparently was intended to serve a trademark purpose, to wit: identification."

Plaintiff has also established that the design elements of its bags have acquired a secondary meaning, which "connotes the association in the mind of the public of the trademark with the source of the goods." *Id.* Plaintiff submitted evidence of the extensive advertising it has undertaken, as well as numerous unsolicited magazine and newspaper articles written about its products. *See* Declaration of Sandra Stetson ¶¶ 13–19. In addition, plaintiff has received numerous requests to license the use of its mark and design to persons interested in exploiting the "LeSportsac" name. Id. ¶ 20.

The most persuasive evidence, however, that plaintiff's design has achieved secondary meaning is the inference arising by virtue of defendant's having copied almost every detail of plaintiff's product. Plaintiff's bags have enjoyed tremendous success and are in great demand. The public wants "LeSportsac;" and a copy is what defendants gave it. *Harlequin Enterprises, Ltd. v. Gulf & Western Corp.*, 644 F.2d

946, 950 (2d Cir.1981) ("the most significant evidence of secondary meaning"); *see LeSportsac, Inc. v. Dockside Research, Inc., supra,* 478 F.Supp. at 608–09.

Having reviewed the testimony, memoranda and exhibits in this case, I am satisfied that plaintiff has established not only a likelihood of confusion, but a virtual certainty of it. Cursory examination of comparable models of each party's bag discloses that they are almost indistinguishable, except for the differences in the wording of the marks.

For example, plaintiff's exhibits 14 (plaintiff's bag) and 15 (defendant's bag) are both white, oversized handbags. Each has on one side a large outer pocket with no closure, and on the other side two smaller outer pockets, each with a zippered closure and hollow rectangular zipper pull. Each bag has a large flap that folds over one side of the bag, and each is carried by a color coordinated cotton shoulder strap. On each bag, of course, the elongated elliptical logo appears repeatedly across the trim and around the outer edge of the fold-over flap. Also nearly identical in appearance are totebags (PX 1, 16), backpacks (PX 17, 18) and travel bags (PX 19, 20).[1]

The striking similarities between plaintiff's and defendant's bags are accentuated by the significant dissimilarities between plaintiff's bags and the third-party bags introduced as exhibits by defendant. Comparison of all the bags creates a clear impression that defendant deliberately copied the distinctive features of plaintiff's bag. As the Court stated in *Perfect Fit Industries v. Acme Quilting Co.,* 618 F.2d 950 (2d Cir.1980):

> In assessing the likelihood of confusion to the public, an important factor is whether or not the second comer created the similar trade dress intentionally. If

there was intentional copying, the second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded.

*Id.* at 954.

Defendant contends that because so many similar nylon bags are on the market, plaintiff is somehow not entitled to this injunction. To the extent defendant is attempting to show the weakness of plaintiff's mark, its argument is meritless. The factors discussed above as demonstrating that plaintiff's product has achieved a secondary meaning are also indicia of the strength of plaintiff's mark and the protection to which it is entitled. *See McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1131–32 (2 Cir.1979): *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,* 486 F.Supp. 414, 420 (S.D.N.Y.1980).[2]

### Irreparable Injury

The likelihood of confusion shown by plaintiff provides the Court with substantial evidence of irreparable injury. The average consumer, seeing defendant's products in discount stores and believing them to have originated from plaintiff, may well believe plaintiff has lowered the quality of its product line. This may result in future lost sales for plaintiff and a loss of consumer good will. *See Omega Importing Corp. v. Petri-Kine Camera Co.,* 451 F.2d 1190, 1195 (2d Cir.1971). The likelihood of irreparable harm is particularly acute in cases such as this, where plaintiff's mark is its most valuable corporate asset. *See Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc., supra,* 486 F.Supp. at 429. Accordingly, I find that plaintiff has established a strong likelihood of irreparable harm.

---

1. "PX" is used to refer to Plaintiff's Exhibits.

2. The argument that plaintiff has somehow abandoned its mark by allowing so many others to sell nylon luggage is also meritless. The existence of infringers other than defendant, against whom plaintiff has not instituted action,

is not relevant to whether an injunction should issue against this defendant. *Playboy Enterprises, Inc. v. Chuckleberry Publishers, Inc.,* 486 F.Supp. 414, 423 n. 9 (S.D.N.Y.1980) (citing cases).

*Serious Questions Going To The Merits*

Whether and to what extent plaintiff ultimately prevails on its claims depends upon its ability to prove that defendant's products would be likely to cause public confusion within the meaning of sections 32(1) and 43(a) of the Lanham Act. Having demonstrated at this stage a likelihood of confusion, plaintiff has clearly shown there are sufficiently serious questions going to the merits of this case to make them a fair ground for litigation.

*Balance of Hardships*

Defendant introduced extensive evidence of the hardship it would allegedly suffer if forced to recall its bags and place them in storage pending the resolution of this litigation. Defendant also introduced evidence of the number of outstanding orders for similar bags which it would be forced to cancel if an injunction were issued.

■ Defendant has brought these hardships on itself. It is the duty of the newcomer to identify its product in a manner that will avoid a likelihood of confusion with the product of the first comer. *See Harold F. Ritchie, Inc. v. Chesebrough-Ponds, Inc.,* 281 F.2d 755, 758 (2d Cir.1960). Having adopted its course, defendant cannot now complain that it will be overly expensive to mend its ways. *Ideal Industries, Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir.1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980).

Moreover, the true hardships in this case tip heavily in favor of plaintiff, who risks losses of goodwill, sales and possibly licensing arrangements if defendant is allowed to continue selling its confusingly similar bags pending resolution of this action. The damage to plaintiff's mark that may occur if an injunction is not issued far outweigh the economic hardship that may be suffered by defendant if an injunction is entered. *See Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc., supra,* 486 F.Supp. at 434.

For the foregoing reasons, the motion for a preliminary injunction is granted.[3] Defendant shall be enjoined from advertising or offering for sale the bags such as those produced at the hearing, which contain a combination of mark and trade dress confusingly similar to that used by plaintiff.

Plaintiff is directed to post a bond in the amount of two hundred fifty thousand dollars ($250,000) with the Clerk of the Court not later than 3:00 p.m., July 13, 1984.

SO ORDERED.

## ON MOTION TO MODIFY INJUNCTION

Following a hearing in this action, the Court issued a memorandum on July 11, 1984 finding that defendant was infringing plaintiff's trademark and trade dress for lightweight nylon luggage; a preliminary injunction was entered on July 13, 1984. Defendant now moves for an order modifying the preliminary injunction to allow it to sell the luggage in question; and plaintiff cross-moves to broaden the injunction.[1] For the reasons developed below, defendant's motion is denied and plaintiff's cross-motion is granted.

*Defendant's Motion to Modify the Injunction*

Defendant requests that the preliminary injunction be modified to permit it to sell the enjoined bags if a hangtag is attached which states prominently:

di paris sac

---

3. The showing plaintiff made also entitles it to injunctive relief under New York law on its pendent unfair competition claims. *Harlequin Enterprises, Ltd. v. Gulf & Western Corp.,* 644 F.2d 946, 950 (2d Cir.1981); *Perfect Fit Industries v. Acme Quilting Co.,* 618 F.2d 950, 952 (2d Cir.1980).

1. Plaintiff's motion to broaden the injunction was originally brought as a motion by defendant for a "determination of noninfringement." After discussion with the Court, however, the parties agreed that the issue, whether a knapsack not presently covered by the injunction should be so covered, was properly brought before the Court as a plaintiff's motion.

SOLD EXCLUSIVELY AT AND
MADE EXCLUSIVELY FOR K MART[2]

Defendant contends that attaching this label would remove the likelihood of confusion that prompted the Court to issue the preliminary injunction.

■ The Court has reviewed the proceedings to date in this action, the memorandum of July 11, the facsimile of the tag defendant proposes to use and the memoranda submitted with respect to this motion. Based upon that review, the motion is denied. K Mart's contention that adding a hangtag would eliminate the likelihood of confusion is not convincing, and the cases it relies upon for that argument are distinguishable.

In *Sears, Roebuck & Co. v. Stiffel Company*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), the Supreme Court recognized, in *dictum*, that labeling or "other precautionary steps" *may* prevent consumer confusion as to the source of a product. *Id.* at 232, 84 S.Ct. at 789. *Sears, Roebuck*, however, was a patent case, and as the Court recognized in *Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210 (8th Cir.1976), "[t]he protection accorded by the law of trademark and unfair competition is greater than that accorded by the law of patents...." *Id.* at 1215.

*LeSportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602 (S.D.N.Y.1979), is similarly distinguishable. The presence of a hangtag in that case was just one of the factors leading to denial of a preliminary injunction. *Id.* at 609. Defendant's bags also had defendant's mark sewn prominently into the bag. In the instant case, however, K Mart's mark appears on the bag only in the repeating elliptical logo. I have previously indicated that K Mart's use of the repeating logo was a factor supporting the granting of the preliminary injunction. Accordingly, defendant's motion to modify the preliminary injunction is denied.

*Plaintiff's Motion to Broaden the Injunction*

■ Plaintiff cross-moves to broaden the injunction to prohibit defendant from selling its heavyweight nylon knapsack, Style No. 9995, which allegedly infringes plaintiff's knapsack, model 7192.[3] The Court has already enjoined defendant from selling a lightweight version of the same knapsack. While K Mart correctly points out that there are more dissimilarities between the two bags presently in question than between K Mart's lightweight knapsack and that of plaintiff, the Court nevertheless believes there is still a likelihood of confusion between the two bags.

Defendant's heavyweight knapsack contains the same repeating elliptical logo present on the previously-enjoined bags, as well as the non-functional hollow rectangular zipper pulls that the Court has held are part of plaintiff's protectible trade dress. Additionally, the location of the repeating elliptical logo—on the nylon trim just above a zipper—is identical to that on plaintiff's bag. As the Second Circuit has repeatedly stated, "it is the 'combination of features as a whole rather than a difference in some of the details which must determine whether the competing product is likely to cause confusion in the mind of the public.'" *Harlequin Enterprises, Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 949 (2d Cir.1981) (quoting *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 955 (2d Cir.1980).

Once again, comparison of the bags "creates a clear impression that defendant deliberately copied the distinctive features of plaintiff's bag." Memorandum and Order of July 11, 1984, at 7–8. The Second Circuit's position on this practice is clear: "Evidence of conscious imitation is pertinent because the law presumes that an intended similarity is likely to cause confu-

---

**2.** The tag is approximately 3½" square, made of heavy paper, and would be hung from each bag. A facsimile of the tag was submitted to the Court on September 7, 1984 as Defendant's Exhibit C.

**3.** The bags were submitted to the Court on September 7, 1984 as Defendant's Exhibit A and B, respectively.

sion." *Id.* (citing *Perfect Fit Industries, Inc. v. Acme Quilting Co., supra,* 618 F.2d at 954; *RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d 1058, 1060 (2d Cir.1979); *Harold Ritchie, Inc. v. Chesebrough-Pond's, Inc.,* 281 F.2d 755, 758–60 (2d Cir. 1960)).

Accordingly, plaintiff's motion to broaden the preliminary injunction is granted. It is hereby ORDERED that:

(1) the injunction issued July 13, 1984 is amended so that defendant is enjoined from selling its heavyweight knapsack, Style No. 9995; and

(2) the bond in this action, previously set at $250,000, shall be increased to $400,000, to be posted not later than 5:00 p.m., September 21, 1984.

SO ORDERED